**BLINDER, ROBINSON & CO., INC., Meyer Blinder, Larry Blinder, and Harold Gordon, Appellants,**

**v.**

**Craig A. GOETTSCH, Superintendent of Securities for the State of Iowa, Appellee.**

**No. 87–1410.**

Supreme Court of Iowa.

Nov. 23, 1988.

Rehearing Denied Dec. 16, 1988.

See also 403 N.W.2d 772.

Jerry E. Williams and Michael W. Thrall of Nyemaster, Goode, McLaughlin, Emery & O'Brien, P.C., Des Moines, and Alan C. Jacobson, Englewood, Colo., for appellants.

Thomas J. Miller, Atty. Gen., and Susan Barnes, Asst. Atty. Gen., for appellee.

Considered by LARSON, P.J., and SCHULTZ, CARTER, SNELL, and ANDREASEN, JJ.

**ANDREASEN, Justice.**

This is an appeal by Blinder, Robinson & Co., Inc., Meyer Blinder, Larry Blinder and Harold Gordon (Blinder) from the findings of fact, conclusions of law and order in an administrative hearing of the Insurance Division of the Department of Commerce. This case involves the enforcement of the registration requirements of Iowa's Blue Sky Law, Iowa Code chapter 502. The primary issues in this appeal are whether the state has complied with the statute of limitations in Iowa Code section 502.304(2) (1985) and whether the hearing officers should have recused themselves pursuant to Iowa Code section 17A.17(3) (1985).

## I. *Background.*

Iowa Code section 502.201 requires that the securities traded be registered. Iowa Code section 502.301 requires the registration of broker-dealers, such as Blinder, Robinson & Co., Inc. and individual agents selling securities for the broker-dealers.

Iowa laws concerning the sale of securities (Blue Sky Laws) are administered and enforced by the Securities Department of the Insurance Division of the Department of Commerce. *See* Iowa Code §§ 502.601 & 505.1 (1987). Legal actions to enforce these laws are brought by the administrator of the securities department (also referred to as the superintendent of securities). *See* Iowa Code § 502.601. The superintendent of securities is appointed and supervised by the commissioner of insurance. *See id.* Hearings sought by the superintendent of securities are heard by a deputy insurance commissioner.

On October 1, 1982, the superintendent of securities (superintendent) filed a notice of hearing which instituted a proceeding to deny, suspend or revoke Blinder's registration pursuant to Iowa Code section 502.304 (1985). This notice alleged both the sale of nine unregistered securities and sales by five unregistered agents of Blinder in March of 1981. The notice of hearing was accompanied by a subpoena duces tecum which required Blinder to produce documents relevant to security transactions in Iowa from January 1, 1979, to October 1, 1982. Blinder complied with the subpoena and delivered the documents in November 1982.

A hearing on the notice was scheduled for November 2, 1982. At Blinder's request, the hearing was indefinitely continued by agreement of the parties until a mutually agreeable time.

The documents submitted by Blinder in November 1982 were reviewed in detail by an attorney from the securities department in the autumn of 1984. On January 24, 1985, the superintendent filed an amended notice of hearing alleging more than 160 registration violations by twenty-two agents during the period of 1979–1982. Meyer Blinder, Larry Blinder and Harold Gordon, officers of Blinder, Robinson & Co., were named for the first time in the January 1985 notice. Blinder was also charged with the sale of unregistered securities before its registration as a broker-dealer in Iowa. A second amended notice of hearing was filed on March 12, 1985, which also expanded the charges against Blinder.

The superintendent did not accuse Blinder of fraudulent practices under Iowa Code sections 502.401–.407 and the notices filed were not based on any customer complaints against Blinder. Prior to the 1985 notices, Blinder's registration as a broker-dealer in Iowa had been renewed twice; once on October 1, 1983, and again on September 5, 1984.

This matter was presented for hearing before Tony Schrader, a deputy insurance commissioner, between April 8 and July 11, 1985. Each party filed a proposed order with the hearing officer on February 27, 1986. On September 2, 1986, the hearing officer filed his finding of fact, conclusions of law and order. This order revoked the broker-dealer license of Blinder and censured Meyer Blinder, Larry Blinder and Harold Gordon.

On September 3, 1986, Blinder filed a petition for judicial review of the hearing officer's decision.[1] Blinder claimed that Mr. Schrader was required to recuse himself pursuant to Iowa Code section 17A.17(3) (1985). Their amended petition for judicial review asserted that Schrader was disqualified from conducting the hearing because he was under the authority of Insurance Commissioner William Hager. While in private practice, Commissioner Hager participated in this contested dispute as an advocate for Blinder.

The district court granted Blinder's motion to take additional evidence and remanded the matter to the agency for a hearing on the propriety of the hearing conducted by Mr. Schrader. On July 17, 1987, David Lyons, First Deputy of the Commissioner of Insurance, concluded that Commissioner Hager had not exerted influence over the hearings and that Iowa Code section 17A.17(3) had not been violated. On October 13, 1987, the district court affirmed the agency decisions in all respects.

Blinder raised two issues on appeal that we will address. First, were the proceedings commenced in 1985 in excess of the statutory authority provided in Iowa Code section 502.304(2) (1985)? Second, did the hearing officers err in failing to recuse themselves pursuant to Iowa Code section 17A.17(3) (1985)?

## II. *Standard of Review.*

Our review is conducted in accordance with Iowa Code sections 17A.19(8) and 17A.20 (1987). We review this case to determine if there has been a violation of a statutory provision or whether the agency exceeded its statutory authority.

## III. *Iowa Code Section 502.304(2) (1985).*

Iowa Code section 502.304(2) (1985) provides:

> The administrator may not institute a suspension or revocation proceeding under subsection 1 on the basis of a fact known to the administrator when regis-

---

1. Normally, the decision of the hearing officer would be appealed to the Insurance Commissioner before an appeal to the district court. *See* Iowa Code § 17A.19(1) (1987) (exhaustion of administrative remedies); *see also Continental Tel. Co. v. Colton*, 348 N.W.2d 623, 625–27 (Iowa 1984). In this case, the administrator conceded that it would be improper for Commissioner Hager to review the hearing officer's decision. The parties agreed that the appeal could be taken directly from the hearing officer's decision to the district court.

tration became effective unless the proceeding is instituted within thirty days after the effective date.

Blinder contends that because the 1985 allegations are based entirely on information provided by Blinder in November 1982, the basis for the allegations were facts known to the superintendent when Blinder's registration was renewed in October 1983 and September 1984. Therefore, the 1985 notices were untimely and in excess of the statutory authority of the superintendent.

The superintendent counters this challenge with two arguments. First, the superintendent contends that the 1985 notices were permissible amendments to the proceeding initiated by the October 1982 notice. Under this interpretation, the three notices filed against Blinder are, in essence, the same action. The second argument goes to the interpretation of section 502.304(2). According to the superintendent, a *fact known* is limited to a judicially determined fact and does not include information discovered by the state during investigations.

█ We initially consider the argument that the 1985 notices should be considered as a permissible amendment or continuation of the proceedings initiated by the October 1982 notice. A comparison of the 1982 notice and the notices filed in 1985 reveals that the 1982 notice alleges that five unregistered agents sold nine unregistered securities in March 1981 while the 1985 notices involve 160 sales of forty-nine unregistered securities by twenty-two agents from January 1, 1979 until December 31, 1982. The 1985 notices named several individuals, including Meyer Blinder, Larry Blinder and Harold Gordon, who were not included in the October 1982 notice. Based on the significant differences in the time periods covered as well as the different agents, securities, and sales involved in the 1985 notices as compared to the 1982 notice, we hold that the 1985 notices constitute separate proceedings and are not a continuation of the 1982 notice.

We next consider whether the 1985 notices were timely based on the statutory requirement of Iowa Code section 502.-304(2) (1985). This question will turn on whether the basis for the 1985 notices were facts known to the superintendent prior to the renewal of Blinder's registration.

█ The superintendent contends that the "fact known" language in section 502.-304(2) is limited to judicial determinations and does not include information discovered in the course of an investigation and cites *In re Shearson Loeb Rhoades, Inc. & Burleson,* [1978–1981 Transfer Binder] Blue Sky Law Rep. (CCH) ¶ 71, 666 (Mass. Sec.Div. Sept. 24, 1981), to support this proposition. In *Shearson,* the Massachusetts Securities Division interpreted language in the Massachusetts Blue Sky Law which was similar to Iowa Code section 502.304(2). The ruling stated:

> It shall be the position of the Division that the words "fact or transaction known" shall encompass only those situations where there has been an adjudication by the Division, or by some other judicial or administrative body.

This administrative ruling was based in part on the Massachusetts Securities Division's concern that strict adherence to the thirty-day requirement would force the division to institute suspension or revocation proceedings against every broker-dealer in which an inquiry was being conducted in order to preserve the division's rights. The *Shearson* ruling also relied upon the commentary to the same section of the Uniform Securities Act.[2] That commentary states:

> This provision is new. Its inclusion is dictated by elemental considerations of fairness. All it means is that when an Administrator, *for example,* knowingly waives an old criminal conviction and permits an applicant to become registered, neither he nor his successor may hold that conviction over the registrant's head for as long as he is registered.

---

2. When interpreting the Iowa Securities Act, we may look to interpretations of similar provisions of the Uniform Securities Act. *See Briggs*

*v. Sterner,* 529 F.Supp. 1155, 1174 (S.D.Iowa 1981).

Uniform Securities Act, Commentary to § 204(a) (emphasis added).

We are reluctant to embrace the Massachusetts agency ruling as the primary authority on which to base our decision. It is apparent that section 502.304(2) is intended to provide a statute of limitations for revocation proceedings. This statute of limitations is based on principles of fairness. The commentary to the Uniform Securities Act provides a hypothetical involving a criminal conviction to demonstrate the principles of fairness embodied in this statute. An investigation left incomplete, or conducted in bad faith, can be misused in the same manner as a past criminal conviction.

Several of the reasons for revocation under section 502.304 can be based on information other than judicially determined facts. Section 502.304 provides that a registration may be revoked for lack of knowledge or training, *see* Iowa Code section 502.304(1)(i) (1985); failure to reasonably supervise agents, *see* Iowa Code section 502.304(1)(j) (1985); dishonest or unethical practices, *see* Iowa Code section 502.-304(1)(g) (1985), or for misleading statements on an application for registration, *see* Iowa Code section 502.304(1)(a) (1985). When enforcing this type of violation, the superintendent is not required to depend entirely on judicially determined facts. It does not seem reasonable that the legislature intended the statute of limitations to apply only to those investigations based on judicially determined facts and not to proceedings based on other information. If this was the legislature's intention, that intention would have been clearly stated. We do not interpret the word "fact" as used in section 502.304(2) to be limited to judicial determinations.

To interpret "fact known" in the context of Iowa Code chapter 502, we utilize Iowa Code section 502.504 (1985) by way of analogy. Section 502.504 provides time limitations on actions to enforce a liability based on a violation of registration requirements or fraudulent practices. Iowa Code sections 502.504(1) and (2) provide:

1. No action shall be maintained to enforce any liability created under either section 502.501 [registration requirements] or section 502.503, subsection 1 insofar as it relates to section 502.501 unless brought within two years after the violation upon which it is based.

2. No action shall be maintained to enforce any liability created under either section 502.502 [fraudulent practices] or section 502.503, subsection 1, insofar as it relates to section 502.502, unless brought within the shorter of the following two periods:

a. Five years after the act or transaction constituting the violation; or

b. Two years after the plaintiff *receives actual notice of,* or *upon the exercise of reasonable diligence* should have *known* of, the *facts* constituting the violation.

*Id.* (emphasis added).

Particularly instructive is section 502.-504(2)(b), which equates actual notice with facts known. In this section, *facts* are not limited to judicial determinations, they consist of information which the plaintiff has actual notice of, or, upon the exercise of reasonable diligence should have known. Section 502.504(2)(b) provides a reasonable interpretation for a "fact known to the administrator" under section 502.304(2). Under this interpretation, a fact known to the superintendent is information that the superintendent has actual notice of, or, upon the exercise of reasonable diligence should have known of.

In this situation, the allegations in the 1985 notices were based on the information provided to the superintendent by Blinder in November 1982. On appeal, the superintendent concedes that those documents were not reviewed in detail until the fall of 1984, approximately two years later. Based on that investigation, amended notices were filed in January and March of 1985, approximately twenty-six and twenty-eight months after the documents were turned over by Blinder. While the production of documents does not, in itself, provide the superintendent with actual notice, the two-year delay in undertaking a detailed review of those documents does not demonstrate the exercise of reasonable

diligence. By analogy, if the superintendent were in the position of a private citizen bringing an action to enforce a liability created by Blinder's actions in 1979 and 1980, the action would be barred by the statute of limitations found in section 502.-504(1).

The principles of fairness embodied in section 502.304(2) have direct application to broker-dealers that have complied with a request for documents. Here, Blinder's registration was renewed twice before the superintendent began a detailed investigation of the material provided by Blinder. While the superintendent has forcefully argued the necessity of diligent enforcement of Iowa's Blue Sky Laws, this argument is undercut by the untimely undertaking of this investigation. We find that the 1985 notices constituted new and original proceedings which were in excess of the statutory authority of 502.304(2).

This holding is consistent with the purpose of this provision, which is to provide fundamental fairness and prevent arbitrary or capricious action by the superintendent of securities. Our holding requires the administrator to exercise reasonable diligence in reviewing information provided for investigation. The limitations of section 502.304(2) do not take effect so long as the superintendent exercises reasonable diligence. We reverse the district court order affirming the hearing officer's findings. This matter is remanded for hearing on the charges contained in the October 1982 notice of hearing.

### IV. *Violation of Iowa Code Chapter 17A.17(3).*

■ Blinder claims that the hearing officers were subject to the authority of Insurance Commissioner William Hager at the time their orders were filed. While engaged in private law practice, Mr. Hager had, in 1985, represented Blinder in connection with this contested administrative hearing. The professional relationship between Mr. Hager and Blinder was terminated and resulted in a dispute concerning attorney fees. On July 1, 1986, prior to the entry of the order by Mr. Schrader, Mr.

Hager was appointed State Insurance Commissioner. Mr. Schrader, as deputy insurance commissioner, is subject to the authority of Insurance Commissioner Hager.

The proceedings against Blinder are to be conducted in accordance with the State Administrative Procedure Act found in chapter 17A of the Iowa Code. Section 17A.17(3) (1987) provides:

No individual who participates in the making of any proposed or final decision in a contested case shall have prosecuted or advocated in connection with that case, the specific controversy underlying that case, .... *Nor shall any such individual be subject to the authority, direction, or discretion of any person who has prosecuted or advocated in connection with that contested case,* the specific controversy underlying that contested case, or a pending factually related case or controversy, involving the same parties.

*Id.* (emphasis added). Here, the issue is not whether Mr. Hager actually exerted influence over the decisions of the hearing officers. Rather, the issue is whether the statutory requirements of section 17A.17(3) have been violated. The record is clear that Mr. Hager directly participated in this matter as an advocate for Blinder. There is also no dispute that both Mr. Schrader, and Mr. Lyons as deputy commissioners, were subject to the authority, direction, or discretion of Insurance Commissioner Hager. Deputy Commissioners Schrader and Lyons should have recused themselves as required by the Administrative Procedures Act.

We do not find that Blinder waived this argument by failing to raise the issue in a timely manner. We also reject the superintendent's contention that *Citizens First National Bank v. Hoyt,* 297 N.W.2d 329, 333 (Iowa 1980), is relevant to this dispute. *Hoyt* did not deal with an action governed by chapter 17A of the Iowa Code, therefore, it cannot be used to alter the specific statutory requirements of section 17A.17(3).

■ The superintendent argues that the doctrine of necessity allows Mr. Schrad-

er to act as the hearing officer, regardless of whether a conflict exists. The doctrine of necessity allows a hearing officer or judge to preside, even if a conflict exists, if there are no other officers who are qualified. *See Loughran v. Federal Trade Comm'n*, 143 F.2d 431, 433 (8th Cir.1944). According to the superintendent, all other hearing officers would be disqualified because of Mr. Hager's position as Insurance Commissioner. In this situation, however, the doctrine of necessity does not apply. Iowa Code section 17A.11(3) (1987) allows the use of hearing officers from other agencies when necessary. *See Federal Trade Comm'n v. Cement Institute*, 333 U.S. 683, 700–03, 68 S.Ct. 793, 803–04, 92 L.Ed. 1010, 1034–35 (1948) (doctrine of necessity applied because there was no statutory authorization for alternate hearing officers). Because of Insurance Commissioner Hager's direct participation in the hearing of this contested case, a hearing officer not subject to Commissioner Hager's authority should have been utilized.

The findings of fact, conclusions of law and orders of the hearing officers are vacated and the district court decision is reversed. This case is remanded for proceedings consistent with this opinion.

REVERSED AND REMANDED.